UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee, the Chase Manhattan Bank, N.A., as Trustee, Sharon Steel Corporation, Inc., UV Industries, Inc. Liquidating Trust, and David Finkelstein, Arthur R. Gralla, Paul Kolton, Theodore W. Kheel, Edwin Jacobson and Martin Horowitz, as Trustees of the UV Industries, Inc. Liquidating Trust, Plaintiffs,

v.

EXECUTIVE LIFE INSURANCE CO., OCCI & Co., Staniels & Co., Nest & Co., Agway Insurance Company and First Missouri Bank & Trust Co., on behalf of themselves and as representatives of a class of former Holders of 9¼% Senior Subordinated Notes Due April 15, 1987, Mimi Shapiro, Mortimer A. Shapiro, Pacific & Co., Cede & Co. and North Star Oil Company, on behalf of themselves and as representatives of a class of Holders of 9¼% Senior Subordinated Notes Due April 15, 1987, Butcher & Co., William W. Humphrey, Trustee, and Louis H. Spiner, Trustee, on behalf of themselves and as representatives of a class of former Holders of 5⅜% Subordinated Debentures Due November 15, 1995, and Bear Stearns & Co., Cede & Co., Julian S. Goldberg, Mericka & Co., Mutual Shares Corp. and Mutual Qualified Income Fund, Saxon & Co., on behalf of themselves and as representatives of a class of Holders of 5⅜% Subordinated Debentures Due November 15, 1995, Defendants.

No. 83 Civ. 8723 (DNE).

United States District Court,
S.D. New York.

Feb. 5, 1985.

Carter, Ledyard & Milburn, Louis L. Stanton, New York City, of counsel, for plaintiff United States Trust Company of New York.

Dewey, Ballantine, Bushby, Palmer & Wood, John F. Collins, New York City, of counsel, for plaintiff Chase Manhattan Bank, N.A.

Shearman & Sterling, Robert Hausen, New York City, of counsel, for plaintiff Sharon Steel Corporation.

Donovan, Leisure, Newton & Irvine, David S. Versfelt, New York City, of counsel, for defendant Bear Stearns & Co.

Tenzer, Greenblatt, Fallon & Kaplan, William Klein, II, P.C., New York City, of counsel, for defendants Mutual Shares Corp. and Mutual Qualified Income Fund.

Davis Polk & Wardwell, Philip C. Potter, Jr. and Thomas J. Aquilino, Jr., New York City, of counsel, for defendant Butcher & Co. and the 5⅜% Selling Class.

Crystal & Driscoll, P.C., Stephen L. Crystal, New York City, of counsel, for defendants Mimi Shapiro and Mortimer A. Shapiro.

Fine & Ambrogne, Michael B. Roitman, Boston, Mass., of counsel, for defendant Nest & Co.

## MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge:

This motion involves a determination of the propriety of awarding attorneys' fees to the representatives of the losing classes in an interpleader class action. The interpleader class action was brought by the trustees and issuer of bonds under two indentures for the determination of the rights of the bondholders to certain interest payments. The facts giving rise to the interpleader action are set forth in this court's Opinion and Order dated November 20, 1984, and the court will not repeat them here. In the November 20th Opinion and Order, this court: (1) granted the motions for summary judgment of the 9¼% Holding Class and the 5⅜% Holding Class; (2) denied the cross motions for summary judgment of the 9¼% Selling Class and the 5⅜% Selling Class; (3) awarded the Holding Classes the interest installment funds held by the stakeholders, United States Trust Company of New York ("U.S. Trust") and The Chase Manhattan Bank, N.A. ("Chase"); and (4) awarded the representatives of the two Holding Classes costs, including reasonable attorneys' fees, to be paid out of the class funds. The court also ordered the class representatives to send notice to the class members of its decision.

The Selling Classes have moved on two grounds for "partial reargument," or, more appropriately, for modification of judgment, see Transcript of Proceedings, December 27, 1984 ("Tr.") at 4. The Selling Classes requested that the trustees and the issuer, Sharon Steel Corporation ("Sharon"), be ordered to bear the burden of sending notice to the class. At a hearing held before the court on December 27, 1984, attended by counsel for the representatives of the four classes, counsel for the trustees and counsel for the issuer, all parties agreed that the trustees should bear the burden of notice. Furthermore, the court finds that the trustees are best suited to send notice to the class members, because they have easy access to the names and addresses of the class members and because they have been keeping the bondholders informed as to the status of litigation involving these indentures since Sharon succeeded the original issuer in 1979. By Stipulation and Order dated January 22, 1985, the court modified the No-

vember 20, 1984 order and directed the trustees to send notice to their respective bondholders.

The second ground of the motion for modification of judgment involves attorneys' fees. The representatives of the two Selling Classes have requested leave to file applications for attorneys' fees. For the reasons set forth below, this request is denied.

## DISCUSSION

■ There are two possible sources for payment of the requested attorneys' fees: (1) the accumulated interest fund awarded to the Holding Classes; or (2) Sharon, the interpleader plaintiff and issuer. The representatives of the two Selling Classes are not entitled to an award of attorneys' fees from either source.

■ The court will not charge the Holding Class funds for the attorneys' fees of the Selling Classes. The court, in its November 20th ruling, awarded attorneys' fees to the Holding Class representatives based on the "common fund" doctrine; the principle that a class representative who protects or recovers a common fund for the benefit of persons other than his client is entitled to a reasonable attorneys' fee from the fund. *Boeing Co. v. Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). *See also Hall v. Cole*, 412 U.S. 1, 5–6 & n. 7, 93 S.Ct. 1943, 1946 & n. 7, 36 L.Ed.2d 702 (1973) (courts "have traditionally awarded attorneys' fees to the successful plaintiff when his representative action creates ... a 'common fund,' the economic benefit of which is shared by all members of the class."). There is no basis under the common fund doctrine, however, for taxing the fund for attorneys' fees to the unsuccessful litigants. The Selling Class representatives have not bestowed any benefit on the members of the Holding Classes warranting dilution of the funds. Indeed, the Selling Class representatives, by their cross-motions for summary judgment, have strenuously attempted to defeat the claims of the Holding Class members.

The Selling Class representatives rely on a number of cases for the proposition that even non-prevailing parties are entitled to attorneys' fees. In the cases cited, however, the unsuccessful objectors awarded attorneys' fees were, in fact, members of the class that recovered under the settlement agreements. *See, e.g., Elliot v. Sperry Rand Corp.*, 680 F.2d 1225, 1226–27 (8th Cir.1982); *Frankenstein v. McCrory Corp.*, 425 F.Supp. 762, 764 (S.D.N.Y.1977). As members of the class that received the settlement proceeds, they were entitled to attorneys' fees out of the class funds. In contrast, the Selling Class representatives here seek a share of funds that the court has already determined them not entitled to.

At the hearing held on December 27, 1984, counsel for Sharon stated that "there is a substantial fund there, several million dollars of interest, and during the course of just this interpleader action the fund has appreciated substantially." Tr. 14. The trustees, however, oppose any further dilution of the interest funds by the award of attorneys' fees to the Selling Class representatives. *Id.* at 15. The representatives of the two Holding Classes also have objected to the award of attorneys' fees out of the Holding Class fund. *Id.* at 17. The Holding Class members are entitled to the earnings on their interest installments. These funds should not be diluted by the fees of attorneys who bestowed no benefit on the Holding Class members.

■ Moreover, the court finds no basis for assessing attorneys' fees against the interpleader plaintiff, Sharon. Ordinarily, the interpleader plaintiff is awarded attorneys' fees from the stake deposited with the court. *See* 3A Moore's Federal Practice, § 22.16[2], at 22–166 to 22–169. The rationale for this general practice is as follows:

the retention of counsel [by the stakeholder] has in all likelihood been necessitated not because of the stakeholder's wrongdoing but rather because he is the mutual target in a dispute which is not of his own making. Moreover, the stake-

holder is often viewed as having performed a service to the claimants by initiating a proceeding which will expeditiously resolve their claims and by safeguarding the disputed fund by deposit in court, which at the same time guarantees the prevailing claimant immediate satisfaction without the need for execution proceedings.

*Id.* at 22–170 to 22–171.

In the November 20, 1984 order, the court departed from the general practice and refused the interpleader plaintiffs' request for attorneys' fees. The court found that, under the circumstances, it would be inequitable for the bondholders to bear the stakeholders' costs. It would also be inequitable, however, to tax the stakeholders for the Selling Class's costs. This interpleader action has benefitted all of Sharon's bondholders. It has resulted in the speedy and relatively inexpensive resolution of this matter. It was in the interests of all concerned to have the bondholders' rights adjudicated in one forum.

Counsel for the Selling Class representatives contend that "to deny our request [for attorneys' fees] is going to act as encouragement to issuers and indentured trustees to bring any doubts they have before the court, and put the court to work and let the parties spend their money on it." Tr. 9. This court, however, will not discourage the use of interpleader. The Selling Class representatives do not contend, nor can they, that this interpleader action was frivolous or that the interpleader plaintiffs acted in bad faith. Had the trustees acted unilaterally and paid the Holding Class members the interest installments, the Selling Class representatives undoubtedly would have raced to the courthouse to sue the trustees for breach of fiduciary duty. Through use of the interpleader-class action approach, all parties were assured that their rights and interests would be fully represented. The interpleader plaintiffs are not to be penalized for making the appropriate choice.

■ Counsel for the Selling Class representatives further contend that at a pre-trial conference before Judge Duffy, the Judge "forced" counsel to represent the Selling Class. Tr. 7. Accordingly, counsel contend that they performed services in this case analogous to a master, appointed pursuant to Fed.R.Civ.P. 53(a) and, therefore, they should be compensated. Assuming, *arguendo*, that Judge Duffy ordered counsel to represent the Selling Classes, the Selling Class representatives still are not entitled to attorneys' fees from the interpleader plaintiffs. Fed.R.Civ.P. 53 specifically states that a master is entitled to counsel fees. In this case, however, the Selling Class representatives were chosen pursuant to Rules 22 and 23. These provisions contain no explicit provision for the payment of attorneys' fees to class representatives, and the Selling Class representatives were on notice of the risk that their costs would not be reimbursed. Indeed, under Rule 23, class representatives are chosen, in part, based on their ability to bear the burden of the litigation. Moreover, if the Selling Class representatives felt that they had been treated unfairly by Judge Duffy or that they lacked the wherewithall to adequately represent the interests of the Selling Classes, their remedy was to move for reconsideration or for withdrawal either before Judge Duffy or before me after the case was reassigned.

In sum, the court finds no basis for assessing either the Holding Class fund or the interpleader plaintiffs for the attorneys' fees of the representatives of the Selling Classes.

## CONCLUSION

The motions of the representatives of the 9¼% Selling Class and the 5⅜% Selling Class to submit applications for costs, including attorneys' fees are denied.

SO ORDERED.