228 F.Supp.2d 1061 (2002)
In re BANKAMERICA CORP. SECURITIES LITIGATION
No. MDL 1264.
United States District Court, E.D. Missouri, Eastern Division.
October 15, 2002.
*1062 Brian E. McGovern, McCarthy and Leonard, Chesterfield, MO, Marie Seth Weiner, Cotchett and Pitre, Burlingame, CA, Stuart M. Grant, Richard M. Donaldson, Grant and Eisenhofer, P.A., Wilmington, DE, for BankAmerica Corp.
Donald H. Clooney, Clooney and Anderson, St. Louis, MO, Mitchell A. Margo, Curtis and Oetting, St. Louis, MO, Martin M. Green, Joe D. Jacobson, Jonathan F. Andres, Green and Schaaf, St. Louis, MO, Jules Brody, Aaron L. Brody, Stull and Stull, New York, NY, Daniel W. Krasner, Robert Abrams, Wolf and Haldenstein, New York City, Martin D. Chitwood, Edward H. Nicholson, Jr., Chitwood and Harley, Atlanta, GA, Vincent R. Cappucci, Andrew J. Entwistle, Entwistle and Cappucci, New York City, Neal S. Berinhout, Edward H. Nicholson, Jr., Jeffrey H. Konis, Chitwood and Harley, Atlanta, GA, for Kevin Kloster, Joseph Hempen, John M. Koehler, David P. Oetting.
Arthur N. Abbey, James S. Notis, Stephen T. Rodd, Abbey and Gardy, New York City, Daniel W. Krasner, Clinton A. Krislov, Robert J. Stein, III, Michael R. Karnuth, Krislov and Associates, Ltd., Chicago, IL, for Selma Kaiser, Brian Markee, Walter E. Ryan, Jr.
Reed R. Kathrein, John K. Grant, Christopher P. Seefer, Milberg and Weiss, San Francisco, CA, for Ernesto Gumapas, Sydney Sorkin, Herman Shyken.
Jeffrey S. Kessinger, St. Louis, MO, for Carol MacKay.
John Michael Clear, Jeffrey S. Russell, Bryan Cave LLP, St. Louis, MO, Warren R. Stern, Robert B. Mazur, Jonathan M. Moses, Wachtell and Lipton, New York City, NY, for Hugh L. McColl, Jr., James H. Hance, Jr., Marc D. Oken, Bank of America.
Barry A. Short, Lewis and Rice, St. Louis, MO, John Michael Clear, Jeffrey S. *1063 Russell, Bryan Cave LLP, St. Louis, MO, Warren R. Stern, Robert B. Mazur, Jonathan M. Moses, Wachtell and Lipton, New York City, NY, Mark H. Epstein, Ronald L. Olson, Munger and Tolles, Los Angeles, CA, David H. Fry, Munger and Tolles, San Francisco, CA, for David A. Coulter, Michael E. O'Neill, John J. Higgins.
Vincent R. Cappucci, Andrew J. Entwistle, Entwistle and Cappucci, New York, NY, for JAS Securities, LLC.
Reed R. Kathrein, John K. Grant, Christopher P. Seefer, Milberg and Weiss, San Francisco, CA, for Milberg, Weiss, Bershad, Hynes & Lerach, LLP.
Mark H. Levison, Lathrop And Gage, St. Louis, MO, for Wachovia Bank, Nat. Ass'n.
Reed R. Kathrein, Milberg and Weiss, San Francisco, CA, for Alison Desmond.

ORDER
NANGLE, District Judge.
In an Order dated July 8, 2002, (Doc. 553), the Court set forth the background of this multi-district litigation securities class action case and held that a $490 million settlement providing $156.8 million to the BankAmerica plaintiff classes and $333.2 million to the NationsBank plaintiff classes was fair, reasonable and adequate. In a subsequent Order dated September 30, 2002 (Doc. 571), the Court approved the proposed settlement and revised plan of allocation.[1] The Court assumes the reader's familiarity with both of these Orders.
Presently before the Court are a number of applications for attorneys' fees, costs and expenses. Counsel for BankAmerica plaintiffs seek attorneys' fees amounting to 25% of their clients' $156.8 million settlement fund recovery, plus an additional $1,745,569.46 in costs and expenses.[2]See Doc. 574. Counsel for NationsBank plaintiffs seek attorneys' fees amounting to 25% of their clients' $333.2 million recovery, plus $3,702,961.50 in costs and expenses.[3]See Doc. 573. Counsel for FSBA seek 5% of any attorneys' fees awarded to counsel for the NationsBank plaintiffs. See Doc. 503. Named plaintiffs seek to be reimbursed for their costs and expenses. See Docs. 548, 551, 555. Finally, several lead NationsBank class plaintiffs who have objected to the settlement seek attorneys' fees, costs and expenses relating to their objections. See Docs. 519, 551.

I. Lead Counsel's Applications for Fees
"A litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). When attorneys make a claim for fees from a common fund, however, their interest is "adverse to the interest of the class in obtaining recovery *1064 because the fees come out of the common fund set up for the benefit of the class." Rawlings v. Prudential-Bache Props., Inc., 9 F.3d 513, 516 (6th Cir.1993). This divergence of interests requires a court to assume a fiduciary role in reviewing fee applications because "there is often no one to argue for the interests of the class (that their recovery should not be unfairly reduced), since it is to be expected that class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel." Rawlings, 9 F.3d at 516. (footnote omitted).
Courts employ two approaches when analyzing requests for attorneys' fees. Under the "lodestar" method, the hours expended by an attorney are multiplied by a reasonable hourly rate to produce a fee amount which can be adjusted to reflect the characteristics of a given action. Johnston v. Comerica Mortgage Corp., 83 F.3d 241, 244 (8th Cir.1996). Alternatively, under the "percentage of the recovery" approach, a court may award a percentage of the common fund that the attorneys obtained for their clients during the course of the litigation. Johnston, 83 F.3d at 245. The Court has the discretion to choose which approach to apply. Id. at 246.
Having presided over this case for nearly four years, the Court finds the percentage of recovery method to be equitable and appropriate. Specifically, the Court finds that an 18% award from the net common fund[4] of each class is appropriate and reasonable, considering the actual amount of time devoted to this case by plaintiffs' counsel, the complexity and duration of this litigation, the experience and ability of the attorneys involved, and awards in similar cases.[5] Class members were well served by experienced attorneys who, through considerable time and effort, obtained a significant recovery for their clients.
*1065 Counsel for both classes undertook this complex litigation on a contingent basis and advanced considerable funds with no assurance of a recovery. They actively litigated this case for more than three years before reaching a settlement. They engaged in substantial discovery, including taking more than 75 depositions of fact and expert opinion witnesses, reviewing more than 1.5 million pages of documents, and consulting with numerous experts in the fields of accounting, economics, banking regulatory compliance and valuation. As was made clear to the Court in many hearings and conferences, class counsel thoroughly analyzed the relevant state and federal laws and the facts relevant to their respective clients' claims. At the time of settlement, the case had been set for trial and the Court and all parties were deeply involved in trial preparation. Class counsel expended much time and effort to negotiate and effectuate the final terms of the settlement agreement. As discussed in the Court's July 8 Order (Doc. 553), the class members' response to the settlement has been overwhelmingly favorable. Similarly, the Court has received only a minuscule number of objections to class counsel's attorney fee requests.[6]
In support of their applications for attorneys' fees, class counsel have submitted affidavits from all counsel detailing the fees incurred in furtherance of this litigation. These affidavits set forth the number of hours expended by each individual involved and the relevant hourly rates. Collectively, class counsel have spent more than 81,000 hours in as yet uncompensated legal work including: factual investigation; document review; legal research; preparation of legal briefs, memoranda and other documents; preparation for, taking and defending depositions; working closely with expert witnesses; and other tasks.
While the Court has determined that attorneys' fees of 18% of the respective net common funds are reasonable, the Court nevertheless verifies the reasonableness of such fee awards by calculating the fees submitted by lead counsel under a lodestar approach. See Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1157 (8th Cir.1999).

A. Counsel for BankAmerica Plaintiffs
Lead counsel for BankAmerica plaintiffs have reported a "lodestar" of $8,617,645.00. Accordingly, their lodestar represents approximately 5.6% of their net recovery.[7] While the total number of hours reported, 22,393.40, is quite large, it nonetheless appears reasonable in light of the difficulty in prosecuting this complicated case against expert and experienced defense counsel. Similarly, while the hourly rates ranging up to $695 are high for the Eastern District of Missouri, they are nonetheless within the range of reasonableness in the realm of nationwide securities class actions.
Counsel for BankAmerica plaintiffs have requested an award of attorneys' fees equal to 25% of the recovery of their plaintiff class. This is more than four times their reported lodestar. Such an award would overcompensate counsel at the expense of the BankAmerica plaintiffs. See Paul, Johnson, Alston & Hunt v. Graulty, *1066 886 F.2d 268, 271 (9th Cir.1989) (while it is well settled that the lawyer who creates a common fund is allowed an extra reward so that he might share the wealth of those upon whom he has conferred a benefit, the amount of such reward must be reasonable under the circumstances.) It is the judgment of the Court that a reasonable fee award in this case is 18% of the net recovery of the BankAmerica plaintiffs. An 18% fee, approximately $27,584,660.76 plus interest, compensates BankAmerica counsel for their time and effort, rewards them for the results achieved, and provides an adequate incentive for competent counsel to pursue similar cases in the future. Distribution of this fee award to the various participating counsel shall be the responsibility of lead counsel.

B. Counsel for NationsBank Plaintiffs
Lead counsel for NationsBank plaintiffs have reported a "lodestar" of $20,188,345.75. Accordingly, their lodestar represents approximately 6.2% of their net recovery.[8] As with the BankAmerica counsel above, the total number of hours reported, 59,049.23, and the hourly rates which range up to $625, fall within the high end of reasonable.
Counsel for NationsBank plaintiffs have requested an award of attorneys' fees equal to 25% of the recovery of their plaintiff class. This is more than four times their reported lodestar. Such an award would overcompensate counsel at the expense of the NationsBank plaintiffs. It is the judgment of the Court that a reasonable fee award in this case is 18% of the net recovery of the NationsBank plaintiffs. An 18% fee, approximately $58,831,424.38 plus interest, compensates NationsBank counsel for their time and effort, rewards them for the results achieved, and provides an adequate incentive for competent counsel to pursue similar cases in the future. Distribution of this fee award to the various participating counsel shall be the responsibility of lead counsel.

C. Discussion
Although the awards to both sets of class counsel are less than the fees requested, it is important to note that even a small percentage of the class recoveries in this case is a very significant award of money. As the Court has remarked throughout this litigation, class counsel and defense counsel have performed at exceptionally high levels, and all parties have been exceedingly well represented.

II. Lead Counsel's Applications for Reimbursement of Expenses
Class counsel have submitted detailed explanations of the expenses they are seeking to recover in this case, including out-of-pocket costs for: expert witnesses; computerized research; court reporting services; travel expenses; copy, telephone and facsimile expenses; mediation; and class notification. Affidavits submitted by BankAmerica class counsel detail the $1,745,569.46 requested for reimbursement as litigation expenses. Similarly, affidavits submitted by NationsBank class counsel detail the $3,702,961.50 requested for reimbursement. After having reviewed the submissions of class counsel, the Court finds that such expenses have been appropriately incurred and documented by the various counsel in this litigation. Accordingly, *1067 the Court hereby awards counsel for BankAmerica plaintiffs expenses in the amount of $1,745,569.46 and awards counsel for NationsBank plaintiffs expenses in the amount of $3,702,961.50. As discussed above, such expenses shall be deducted from the relevant settlement funds before attorneys' fees are calculated.
Class counsel have not sought reimbursement for the costs of notice of settlement and claims administration because such costs have been paid for directly out of the respective settlement funds. They have, however, asked the Court to approve the payment of such costs from the settlement funds. Accordingly, the Court hereby approves all such payments made to date and authorizes the payment of up to $1,500,000 of anticipated claims administration expenses for the NationsBank plaintiffs and up to $1,004,006.45 in anticipated claims administration expenses for the BankAmerica plaintiffs.

III. Application of Named Plaintiffs for Reimbursement of Costs and Expenses
The named plaintiffs of the NationsBank classes have filed for reimbursement of expenses not to exceed $2,000 for those named plaintiffs who did not participate in the mediation process, and not to exceed $15,000 for those named plaintiffs who did participate therein. See Docs. 548, 555 (Fifty-six NationsBank plaintiffs have applied for a total reimbursement of $137,217.22). Similarly, BankAmerica named plaintiff Walter Ryan has filed for the reimbursement of $2,000 of expenses in connection with his involvement in this litigation. See Doc. 551. Named plaintiffs have filed for such expenses pursuant to 15 U.S.C. § 78u-4(a)(4), which allows for the reimbursement of "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Such reimbursement was prominently disclosed in the notice of settlement, and no objections were received with respect thereto.
All named plaintiffs seeking reimbursement of expenses have submitted affidavits setting forth the nature of their involvement in this litigation and the amount of expenses incurred. See Docs. 548, 551, 555. The Court has reviewed such affidavits and finds the compensation requested by the named plaintiffs to be reasonable. Accordingly, the Court hereby APPROVES named plaintiffs' applications (Doc. 548, 551, 555) and awards expenses in the amounts noted therein. Such expenses shall be deducted from the relevant settlement funds before attorneys' fees are calculated.

IV. Application for Fees and Expenses by Counsel for NationsBank lead plaintiffs David Oetting, Michael Koehler and Kevin Kloster
As discussed in the Court's July 8, 2002 Order (Doc. 553), NationsBank lead plaintiffs David Oetting, Michael Koehler and Kevin Kloster objected to the settlement on the grounds that its plan of allocation unfairly compensated the NationsBank plaintiffs, and that the settlement was reached without the knowledge or consent of NationsBank class representatives. See Doc. 553 at 23-27. Although the Court ultimately approved the settlement over such objections, counsel for lead plaintiffs now seek attorneys' fees and expenses related thereto. The (non-objecting) NationsBank plaintiffs have opposed such motion on the grounds that: (1) it would be fundamentally inappropriate to award fees and expenses to a law firm of which one of the class representatives, David Oetting, is a named partner; and (2) the motion finds no support in the case law of this Circuit.
The Court DENIES the instant fee application (Doc. 519) on the grounds that *1068 the lead plaintiffs' objections enhanced neither the value of the settlement fund nor the adversarial process. See Petrovic, 200 F.3d at 1156. As the Eighth Circuit has held, to recover fees from a common fund, "attorneys must demonstrate that their services were of some benefit to the fund or enhanced the adversarial process." Id. Because it is without dispute that the services of lead plaintiffs' counsel did not increase the value of NationsBank plaintiffs' recovery, the Court considers only whether the actions of lead plaintiffs' counsel enhanced the adversarial process. Ultimately, the Court finds that their actions did not.
The lead plaintiffs' objections were essentially of a factual nature and were most effectively communicated by the lead plaintiffs through their statements in open court. As lead plaintiffs capably explained, the crux of their objection was that they recalled class counsel stating that class counsel would not settle their claims for less than a particular dollar amount, and that class counsel ultimately agreed to a settlement which failed to meet such stated minimum threshold. Without denigrating in any respect the efforts of their counsel, the Court observes that any contribution to the adversarial process was achieved by the lead plaintiffs in their capacity as lead plaintiffs.[9] Finding that lead plaintiffs' counsel thus did not meaningfully enhance the adversarial process, the Court therefore DENIES lead plaintiffs' application for fees and expenses. (Doc. 519). See Petrovic, 200 F.3d at 1156 (affirming district court's denial of fees to counsel whom district court did not believe to have changed any terms of the settlement agreement and where there was "insufficient indication that the objectors or any other subgroup of class members needed separate counsel.").
Finally, the Court rejects lead plaintiffs' contention that they are entitled to attorneys' fees under Elliott v. Sperry Rand Corporation, 680 F.2d 1225 (8th Cir.1982), a sex discrimination case in which the Eighth Circuit held that objecting named plaintiffs were entitled to fees and expenses. Elliott is distinguishable because, in that case, the interests of the named plaintiffs had diverged from those of the plaintiff class and the named plaintiffs provided representation for "a significant group" of the seven hundred ninety total objectors. Elliott, 680 F.2d at 1226-28. By contrast, in the instant litigation, the interests of the lead plaintiffs in maximizing the recovery of their class did not diverge in any respect from the interests of other class plaintiffs, and lead plaintiffs did not represent any objectors other than themselves. Accordingly, the Court DENIES in its entirety NationsBank lead plaintiffs' application for reimbursement of fees, costs and expenses (Doc. 519).[10]

*1069 V. FSBA's application for attorney fees
Having opted out of the NationsBank plaintiff class and reached an independent settlement with defendants, FSBA now seeks to recover its attorneys' fees and expenses from the NationsBank plaintiffs' settlement fund. FSBA claims that it is entitled to such reimbursement on the grounds that it has conferred a substantial benefit on the NationsBank plaintiffs by contributing to the adversarial nature of this case, and that its efforts have enhanced the value of the NationsBank class settlement. FSBA points to: (1) its arguments with respect to the SEC Consent Order;[11] (2) the affidavit it obtained from the Senior Analyst at Institutional Shareholder Services; (3) its actions in deposing defendants' primary damages expert; (4) the report of its own damages expert; (5) its work with class counsel on the issue of "set off"; and (6) its opposition to defendants' motions for summary judgment, as examples of ways in which it enhanced the adversarial process and thus allegedly conferred a substantial benefit upon the NationsBank plaintiffs.
NationsBank plaintiffs oppose FSBA's application on the grounds that any services performed by FSBA's counsel benefitted FSBA alone, did not increase the size of the settlement fund and did not enhance the class action's adversarial process. NationsBank plaintiffs claim that, conversely, it is the services of counsel for the NationsBank classes that benefitted the FSBA by increasing the value of FSBA's settlement, and enhancing the adversarial process between FSBA and defendants. The Court agrees with the NationsBank plaintiffs and, accordingly, denies FSBA's application (Doc. 503).
FSBA is not entitled to attorneys' fees because it has not demonstrated either that it benefitted the NationsBank plaintiffs' settlement fund or that it enhanced the adversarial process between NationsBank plaintiffs and defendants. Petrovic, 200 F.3d at 1156. FSBA chose early on to opt out, and thereby separated its interests from those of the NationsBank plaintiffs. FSBA hired its own expert and pursued its own legal strategies and theories of recovery. While the performance of FSBA's counsel consistently has been of high quality, the Court finds that FSBA's counsel's efforts not only were intended to benefit FSBA alone, but also achieved such an effect. The efforts of FSBA's counsel did not help to create or enhance the class recovery. Rather, it appears that the settlement between the NationsBank plaintiffs and defendants helped create and enhance the recovery obtained by FSBA. It is the Court's informed conclusion, based on an intimate familiarity with this case, that the efforts of FSBA's counsel *1070 did not substantially or materially benefit the NationsBank plaintiff classes. FSBA's application (Doc. 503) is therefore DENIED.
In a related pleading, NationsBank plaintiffs moved to strike FSBA's reply brief in support of its motion for fees and expenses. Doc. 562. Such motion (Doc. 562) is hereby DENIED as MOOT.

VI. Conclusion
The Court hereby APPROVES lead counsel's applications for attorneys' fees (Docs.486, 499) TO THE EXTENT that it awards lead counsel for each plaintiff class attorneys' fees in the amount of 18% of the net recovery of such class as defined herein. The Court APPROVES lead counsel's applications for expenses (Docs.487, 499) in their entirety. The Court APPROVES the applications of the named plaintiffs for reimbursement of costs and expenses (Doc. 548, 551, 555) in their entirety. The Court DENIES the objecting lead NationsBank plaintiffs' application for fees, costs and expenses (Doc. 519) and FSBA's application for fees, costs and expenses (Doc. 503). The Court DENIES as MOOT NationsBank plaintiffs' motion to strike FSBA's reply brief (Doc. 562).
Plaintiffs' counsel shall be paid the attorneys' fees authorized herein from their respective settlement funds with interest from the date such settlement funds were funded to the date of payment at the same net rate that the settlement funds earn. The awards of attorneys' fees shall be allocated among counsel in a fashion which, in the opinion of lead counsel, fairly compensates plaintiffs' counsel for their respective contributions in the prosecution of this action.
Plaintiffs' counsel and named plaintiffs shall be paid their approved expenses from the respective settlement funds.
The Court shall retain jurisdiction over this case for all matters relating thereto, including the administration, interpretation or enforcement of the settlement agreement and the payment of fees and expenses as set forth in this Order. As set forth in the settlement agreement and notice of settlement, all settlement funds remaining unclaimed one year after the initial date of settlement distribution, whether by reason of uncashed checks or otherwise, plus any funds designated for the expenses of administration which are not expended, may be contributed as a donation to one or more non-sectarian, not-for-profit Section 501(c)(3) organizations as determined by the Court in its sole discretion.
All parties shall comply with their obligations under the settlement agreement and revised plan of allocation.
The Court hereby ORDERS counsel for lead plaintiffs to provide the Court with monthly reports of the amount of money distributed from, and remaining in, the respective settlement funds. Such reports shall be made in writing to the Court in its Savannah, Georgia chambers on the last day of each month, beginning in December, 2002, until further Order of this Court.
This ORDER shall serve as an order of final judgment. Accordingly, the Court hereby INSTRUCTS the Clerk of Court to: DENY as MOOT any outstanding motions previously stayed by the Court; DISMISS the case with prejudice; and CLOSE the case.
So ORDERED.
NOTES
[1] Though not specifically discussed in its September 30, 2002 Order, the Court considers the plan of allocation as revised to include the original plan of allocation so far as the original plan relates to all plaintiffs other than the BankAmerica October purchasers. Accordingly, the Court has approved the allocation of settlement funds with respect to all plaintiffs.
[2] This figure does not include the $800,308.76 paid to date from the BankAmerica settlement fund for the cost of class notice and claims administration, or the estimated $1,004,006.45 in claims-related expenses billed since September 19, 2002.
[3] This figure does not include the $1,018,574.80 paid from the NationsBank settlement fund to the claims administrator as of September 30, 2002, or the additional anticipated $1,500,000.00 in claims administration expenses for the NationsBank plaintiffs.
[4] Attorneys' fees shall be calculated from the common funds only after ALL costs and expenses have been subtracted. BankAmerica counsel shall recover 18% of the net common fund of the BankAmerica plaintiffs. NationsBank counsel shall recover 18% of the net common fund of the NationsBank plaintiffs. Each net common fund shall include any interest that has accrued since such fund began earning interest in March of 2002.
[5] Having studied counsel's list of cases in which the award of attorneys' fees equaled or exceeded the requested 25%, the Court is nevertheless convinced that an award of 18% is reasonable considering awards in similar cases. See In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291 (9th Cir.1994) (affirming attorneys' fees of 5% of $687 million common fund); In re Microstrategy, Inc. Sec. Litig., 172 F.Supp.2d 778 (E.D.Va.2001) (awarding attorneys fees of 18% of $153.5 million common fund of securities and cash); In re 3COM Corp. Sec. Litig., 1999 WL 1039715 (N.D.Cal. July 8, 1999) (awarding attorneys' fees of 18% of $259 million settlement); In re Painewebber Ltd. P'ships Litig., 999 F.Supp. 719 (S.D.N.Y.1998) (awarding attorneys' fees of $25,950,000 of a common fund of more than $200 million); Walco Invests., Inc. v. Thenen, 975 F.Supp. 1468 (S.D.Fla.1997) (awarding attorneys' fees of 15% of $141 million common fund); In re Salomon, Inc. Sec. Litig., 1994 WL 265917 (S.D.N.Y. June 15, 1994) (awarding attorneys' fees of 15% of $64.1 million settlement). See also In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465 (S.D.N.Y.1998) (awarding attorneys' fees of 14% of $1.027 billion settlement); In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297 (N.D.Ga.1993) (awarding attorneys' fees of 5.25% of $305 million); In re Corrugated Container Antitrust Litig., 1983 WL 1872 (S.D.Tex.1983) (awarding approximately 9% in attorneys' fees and expenses of a $366 million class recovery); In re Plywood Antitrust Litig., MDL 159 (E.D.La. 1988) (awarding attorneys' fees of 15% of $171 million recovery); In re Folding Carton Antitrust Litig., 84 F.R.D. 245 (N.D.Ill.1979) (awarding attorneys' fees of 6.6% of $200 million settlement).
[6] Class members William P. Hall, Robert L. Austin, Richard A. Hall, John Canipe, Gene Zafft, Corey Morse Conover and Carol Mackay formally objected that the fees requested by class counsel were excessive. Class members James Willet and Lawrence Flournoy informally made the same objection (through correspondence to the Court).
[7] $156,800,000.00  $1,745,569.46 in non-notice and claims administration expenses  $800,308.76 in already paid notice and claims administration expenses  $1,004,006.45 in anticipated claims related expenses  $2,000 named plaintiff expenses (see below) = $153,248,115.33 net recovery.
[8] $333,200,000.00  $3,702,961.50 in non-notice and claims administration expenses  $1,018,574.80 in notice and claims administration expenses paid to date  $1,500,000 in anticipated claims administration expenses $97,065.00 in expenses for named plaintiffs who did not participate in mediation  $40,152.22 in expenses for named plaintiffs who participated in mediation = $326,841,246.48 net recovery.
[9] As discussed in the Court's July 8, 2002 Order, the Court similarly found that the declaration of Professor Hazard, offered by Curtis, Oetting, Heinz, Garrett & Soule, P.C. ("Curtis, Oetting") on behalf of the objecting lead plaintiffs, did not enhance the adversarial process. See Doc. 553 at 27 n. 7.
[10] Alternatively, as suggested by NationsBank plaintiffs, the instant application could be denied on the grounds that Oetting's interest in seeking to recover from the NationsBank settlement fund fees and expenses which far exceed the recovery to which he is otherwise entitled conflicts with the best interests of the NationsBank class. See Petrovic, 200 F.3d 1140, 1155 ("[i]n situations where there is a close familial bond between a class counsel and a class representative . . . there is a clear danger that the representative may have some interests in conflict with the best interests of the class as a whole when making decisions that could have an impact on attorney fees."); Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1375 (11th Cir.1984) (expressing a concern "that where a named representative is also an employee of class counsel, that named representative may be more concerned with maximizing the return and with satisfying the needs of class counsel than he is with the needs of other class members."); Turoff v. May, Co., 531 F.2d 1357, 1360 (6th Cir.1976) ("Because the financial recovery for reasonable attorney's fees would dwarf the individual's recovery as a member of the class herein, the financial interests of the named plaintiffs and of the class are not coextensive. If the interests of a class are to be fairly and adequately protected, if the courts and the public are to be free of manufactured litigation, and if proceedings are to be without cloud, the roles of class representative and of class attorney cannot be played by the same person."). Recognizing that neither Oetting nor Curtis, Oetting seeks to represent the NationsBank plaintiffs in the role of class counsel, but rather they seek (only) to recover a portion of the class settlement fund as attorneys' fees and expenses, the Court nevertheless finds that the same concerns of conflict of interest arise in the instant case as in the cases cited herein.
[11] As the Court previously has stated, its determination with respect to the admissibility of the SEC Consent Order was not aided by the efforts of any counsel in this case.