840 F.2d 604
 10 Fed.R.Serv.3d 1034
 Roy F. VAN HORN, Randall Bartley, George Asimakis and All
Other Similarly Situated Prisoners of the Ozark
Correctional Center at Fordland, Missouri,
v.
Larry TRICKEY, Superintendent Ozark Correctional Center;
James Purkett, Assistant Superintendent Ozark Correctional
Center; Richard Crismas, Acting Assistant Superintendent
Education, Ozark Correctional Center, Appellees.
Michael PARTON and All Prisoners Now and in the Future of OCC,
v.
Larry H. TRICKEY, Superintendent, OCC, Official Capacity &
Individually; Jim Purkett, Assistant Superintendent, OCC,
Official Capacity & Individually; Bob Blair, Caseworker,
OCC, Official Capacity & Individually; Howard Wilkins, CCA
Officer, OCC, Official Capacity & Individually; and Sgt.
Joseph La Prise, OCC, Official Capacity & Individually, Appellees,
v.
Paul E. LUSTER, Jr., Donald Dale Holt, Steven R. Manis,
Louis Danneman, Lawrence Freulzer, Jr., Robert L.
Simmons, Danny Keller, Timothy Lance,
Todd Burfiend, Lloyd Reeves,
and Chris Cook, Appellants.
 No. 87-1244.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 10, 1987.
Decided March 1, 1988.
Rehearing Denied April 1, 1988.
 
 Janet I. Blauvelt, Kansas City, Mo. (Appointed), for appellants.
 Deborah Neff, Asst. Atty. Gen., Jefferson City, Mo., for appellees.
 Before FAGG and WOLLMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 Inmates at Ozark Correctional Center (OCC) appeal an order of the district court[1] approving a proposed consent decree submitted by attorneys for both sides in this consolidated class action certified under Fed.R.Civ.P. 23(b)(2) challenging the conditions at the OCC. The inmates allege that they were afforded inadequate notice and opportunity to be heard and that the district court improperly failed to address their objections. We affirm.
 
 
 2
 At oral argument, counsel for the inmates conceded that the notice issue was not substantial. We agree, and therefore address it only briefly. Notice of settlement in a certified class action is governed by Fed.R.Civ.P. 23(e), which provides that notice "shall be given to all members of the class in such manner as the court directs." Here, notice consisted of individual notice to class representatives and flyers posted at the OCC. The fact that approximately 180 of the more than 400 inmates objected to the proposal is testimony to the effectiveness of the notice. Although individual notice to each inmate would have been practicable, we find that the notice authorized by the district court was sufficient. Similarly, it was not reversible error for the district court to decline to hold a hearing to allow the inmates to voice their objections personally, either in court or at the OCC, as the inmates requested. Rule 23 does not mandate such a hearing; indeed, such a hearing would eviscerate the efficiency of a class action. Class members need be given only the opportunity to object. Walsh v. Great Atlantic & Pacific Tea Co., 726 F.2d 956, 965 (3d Cir.1983). Here, the inmates were allowed to file individual objections and were represented by counsel at all hearings and conferences.
 
 
 3
 Before discussing the inmates' argument that the district court failed to specifically address their objections, we note that although counsel owes a high standard of duty to the class, Mandujano v. Basic Vegetable Products, Inc., 541 F.2d 832, 834 (9th Cir.1976), a settlement may be approved over a significant percentage of objections from the class members. Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1215-16 (5th Cir.1978), cert. denied, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). The inmates do not allege that their representation was inadequate or that the counsel for the class was involved in fraud or collusion in any way. See generally Hansberry v. Lee, 311 U.S. 32, 42-45, 61 S.Ct. 115, 118-20, 85 L.Ed. 22 (1940).
 
 
 4
 In approving a class settlement, the district court must consider whether it is "fair, reasonable, and adequate." Grunin v. Int'l House of Pancakes, 513 F.2d 114, 123 (8th Cir.), cert. denied, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); In re Flight Transp. Corp. Securities Litigation, 730 F.2d 1128, 1135 (8th Cir.1984), cert. denied, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985).
 
 
 5
 Such a determination is committed to the sound discretion of the trial judge. Great weight is accorded his views because he is exposed to the litigants, and their strategies, positions and proofs. He is aware of the expense and possible legal bars to success. Simply stated, he is on the firing line and can evaluate the action accordingly.
 
 
 6
 Grunin, 513 F.2d at 123 (quoting Ace Heating & Plumbing Co. v. Crane Co., 453 F.2d 30, 34 (3d Cir.1971)). The district court's determination will not be overturned unless the party challenging the settlement clearly shows that the district court abused its discretion. Wiener v. Roth, 791 F.2d 661, 662 (8th Cir.1986); In re Flight Transp., 730 F.2d at 1135; Elliott v. Sperry Rand Corp., 680 F.2d 1225, 1227 (8th Cir.1982).
 
 
 7
 The district court must consider a number of factors in determining whether a settlement is fair, reasonable, and adequate: the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement. Grunin, 513 F.2d at 124 (citations omitted); see also In re Flight Transp., 730 F.2d at 1135. Although in approving a settlement the district court need not undertake the type of detailed investigation that trying the case would involve, see Armstrong v. Bd. of School Directors of Milwaukee, 616 F.2d 305, 314-15 (7th Cir.1980), it must nevertheless provide the appellate court with a basis for determining that its decision rests on " 'well-reasoned conclusions' " and not " 'mere boilerplate.' " In re Flight Transp., 730 F.2d at 1136 (quoting Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 434, 88 S.Ct. 1157, 1168, 20 L.Ed.2d 1 (1968)).
 
 
 8
 Here, the district court summarily concluded, in a three-page opinion, that the experts for both sides had reviewed the inmates' objections and that "[t]he Court has carefully reviewed the written analysis made by the experts * * * and agrees with those experts that the proposed consent decree * * * does provide sufficient framework for the resolution of the complaints made by the class of plaintiffs." This analysis fails to address sufficiently the factors enunciated in Grunin. At argument, counsel for the inmates stated that had the district court made explicit findings in accordance with Grunin, the inmates would not have appealed. Accordingly, counsel requested a remand for a more reasoned opinion.
 
 
 9
 The district court's unexplained failure to follow the clearly expressed procedural law of this circuit gives us some concern. However, if the record contains facts supporting the district court's approval of the settlement, "a reviewing court would be properly reluctant to attack that action solely because the court failed adequately to set forth its reasons or the evidence on which they were based." In re Flight Transp., 730 F.2d at 1136 (quoting Anderson, 390 U.S. at 437, 88 S.Ct. at 1170).[2] We find this particularly true when the action is for equitable relief rather than for monetary damages, the settlement "affects each class member equally, and no allegation is made that the rights of a definable minority group within the class were sacrificed for the benefit of the majority." Pettway, 576 F.2d at 1216. Furthermore, although the inmates did not have the benefit of exhaustive discovery as did the plaintiff class in Grunin, see 513 F.2d at 125, they did not make "a clear and specific showing that vital material was ignored by the District Court." Id. (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 464 (2d Cir.1974)).
 
 
 10
 The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement. Grunin, 513 F.2d at 124; Armstrong, 616 F.2d at 314. Giving this factor its proper emphasis, we cannot find that the settlement is less than fair, reasonable, and adequate, or that the inmates have clearly demonstrated that the district court abused its discretion. We also note that during oral argument counsel for the inmates stressed the procedural nonconformity of the district court's order rather than any inherent unfairness therein.
 
 
 11
 A cursory comparison of the improvements sought by the inmates and those benefits actually received demonstrates that the inmates were highly successful. The inmates' chief complaint was overcrowding, and a new, larger facility was built and is currently being occupied. The problem of violence among the inmates was addressed by employing more corrections officers at the OCC and will also be ameliorated, presumably, by the reduction of overcrowding. New industrial programs were put into place to cut down on idleness and to improve rehabilitation, and the law library was updated. An additional nurse was hired to improve access to medical attention and the sanitary conditions for preparation of food were upgraded, both in response to complaints. Mattresses will now be regularly sanitized before being used by a new inmate. The demand for better linens and clothing was not addressed in the settlement, but counsel for the OCC officials reported that the laundry was refurbished. In sum, we find that the settlement provides "substantial benefits to the class." Grunin, 513 F.2d at 124.
 
 
 12
 The inmates' last contention, that the settlement provides for inadequate compliance procedures, lacks merit. The district court will maintain jurisdiction over this action should a contempt proceeding be necessary. Although the inmates argue that because the average stay at the OCC is only two years it will be difficult to obtain a suitable class representative, this problem is not insurmountable in light of the liberal substitution of representatives commonly allowed in class actions. The district court also created a monitoring committee as proposed in the settlement agreement, consisting of two of the OCC's experts and one of the inmates' experts, to meet 180 days after the issuance of the district court's order and once a year for the next two years thereafter. Finally, there is no indication that the OCC has attempted to evade its responsibilities; in fact, the opposite seems true.
 
 
 13
 The district court's order is affirmed.
 
 
 14
 We express our appreciation to court-appointed counsel for her careful, vigorous, and thorough preparation and presentation of the inmates' contentions.
 
 
 
 [1]
 The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri
 
 
 [2]
 Although Anderson dealt specifically with the approval of a bankruptcy settlement, the same standards have been held applicable to the review of both a settlement of a bankruptcy dispute and a class action under Fed.R.Civ.P. 23(e). In re Flight Transp., 730 F.2d at 1135-36