# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1484

_____

Edward Huyer; Connie Huyer; Carlos Castro; Hazel P. Navas

*Plaintiffs - Appellees*

Wells Fargo & Company; Wells Fargo Bank, N.A.

*Defendants - Appellees*

v.

Kenneth M. Njema

*Movant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 10, 2017
Filed: February 3, 2017

_____

Before SMITH, GRUENDER, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Kenneth Njema appeals the district court's[1] orders denying Njema's motion to join a trespass claim to this class action and approving the class action settlement. Because the district court did not abuse its discretion in denying joinder or in approving the settlement, we affirm.

## I. BACKGROUND

In 2008, plaintiffs filed this class action against Wells Fargo & Co. and Wells Fargo Bank, N.A. ("Wells Fargo"), alleging eight counts, including two violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The plaintiffs' claims related to Wells Fargo's practice of automatically ordering and charging fees for drive-by property inspections when customers fell behind on their mortgage payments. In 2015, the parties participated in mediation and reached a settlement agreement, which provides that Wells Fargo will pay $25,750,000 in exchange for dismissal of the lawsuit and a release of all related claims. The release provision of the settlement agreement requires an injunction against prosecution by class members of any "Released Claims," which the provision defines as any claims "based upon, arising out of, or relating to, in any way, property inspection fees assessed on a mortgage serviced by Wells Fargo, or Wells Fargo's practices in ordering or charging borrowers for property inspections."

On September 2, 2015, the district court preliminarily approved the settlement agreement, scheduled a fairness hearing for January 21, 2016, and entered an injunction prohibiting class members from maintaining any action asserting Released Claims against Wells Fargo in any other court. Afterward, more than 2.7 million notices were sent to class members.

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

Separately, in 2013, Kenneth Njema brought an individual action against Wells Fargo in the United States District Court for the District of Minnesota ("Minnesota district court").[2] In his individual action, Njema raised a claim for trespass, arguing that Wells Fargo's agents entered his property and changed the locks even though Wells Fargo knew that he still resided there. The Minnesota district court denied Wells Fargo's motion for summary judgment as to Njema's trespass claim, and it scheduled a trial on December 14, 2015.

In October 2015, Njema received notice that he was a member of this class action. Njema then attempted to join his individual action with the class action by filing a series of motions. On November 14, 2015, Njema filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML"), seeking to transfer his individual action under 28 U.S.C. § 1407 to the district court for consolidation with the class action. The same day, Njema filed a motion with the Minnesota district court to stay his individual action pending resolution of the JPML transfer motion. Njema later filed a transfer motion with the district court. The following events then occurred.

First, the Minnesota district court denied Njema's motion to stay his individual action, noting that there was "no basis for transferring this action for consolidation." After Njema requested reconsideration of this denial, the Minnesota district court asked Wells Fargo whether the injunction entered in the class action against prosecuting any "Released Claim" would bar Njema from proceeding on his trespass claim. Wells Fargo responded that Njema's trespass claim was not within the scope of the "Released Claims" described in the class action settlement agreement and that, even if it were, Wells Fargo "should be able to waive that protection" so that Njema's

---

[2]The pleadings related to Njema's individual action are contained within the supplemental appendix filed along with Well Fargo's motion to supplement the record, which we grant.

trespass claim could proceed to trial in the Minnesota district court. In light of this response, the Minnesota district court denied Njema's request for reconsideration.

Second, the district court denied Njema's transfer motion. The district court held that "[b]ecause Plaintiff's trespass claim in the District of Minnesota does not in any way relate to property inspection fees charged by Wells Fargo, he is not precluded from pursuing that claim while also remaining a class member in the class action suit in this Court." Third, before the JPML could consider Njema's transfer motion, the Minnesota district court dismissed Njema's individual action for failure to prosecute.

Lastly, Njema filed an objection to the settlement agreement in the district court, arguing that the settlement terms were unfair. On the morning of the fairness hearing, Njema also filed a motion to certify trespass as a related claim under Federal Rule of Civil Procedure 23 and to add himself as a named class representative of this new subclass under Rule 19. Six days later, the district court denied Njema's motion to certify trespass as a related claim, explaining that "the questions of law and fact related to trespass are not common to those raised in the property inspection fee claims." The following month, the court determined that the settlement agreement was fair, overruled all objections, and granted final approval of the settlement. The court also awarded attorneys' fees to class counsel and granted each named plaintiff an incentive award of $10,000. Njema now appeals the court's denial of his motion to certify trespass as a related claim and its approval of the settlement.

## II. DISCUSSION

### A. Motion to Certify Trespass as a Related Claim

Njema first argues that the district court erred in denying his motion to certify trespass as a related claim and create a new subclass under Rule 23. We review this

denial for abuse of discretion. *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010).

Rule 23(a) lists four prerequisites that a plaintiff must satisfy to bring a claim as a class action. Here, the district court properly denied Njema's motion because Njema's trespass claim does not satisfy the requirement that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016) (quotation omitted). Njema's trespass claim involved a different injury than the injury alleged by the class action plaintiffs. Njema alleged that agents of Wells Fargo unlawfully entered his property, whereas the class action plaintiffs alleged that Wells Fargo unlawfully charged fees for drive-by inspections, which do not involve entry onto property. Indeed, the complaint in the class action contains no mention of physical entry or trespass. As a result, no common question existed between the two actions.

Njema responds that the JPML determined that both actions contained common questions of fact "worthy of consideration" of a judicial transfer because the JPML accepted Njmea's transfer motion for filing and created a briefing schedule. However, the acceptance of a transfer motion and creation of a briefing schedule is an automatic clerical function mandated by JPML Rule 6.2(b); it does not suggest that the JPML believed Njema's transfer motion had any merit. Therefore, the district court did not abuse its discretion in denying Njema's motion to certify trespass as a related claim.[3]

---

[3]Njema also argues that the district court erred in denying his request to add himself as a named subclass representative under Rule 19. However, because this argument depends on the court creating a new subclass for trespass claims, it necessarily fails in light of the above analysis.

**B. Approval of the Class Action Settlement**

A district court may approve a class action settlement only after finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). We review a district court's order approving a class action settlement for abuse of discretion. *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015). Njema argues that the district court abused its discretion for five reasons: (1) the court erred in analyzing the factors from *Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988); (2) the settlement will cost class members money, and the court violated the Class Action Fairness Act ("CAFA") by not providing a written finding that non-monetary benefits to the class members substantially outweigh the monetary loss; (3) the release provision unfairly prevents class members from prosecuting related claims, and Wells Fargo violated the preliminary approval order by waiving this release provision in Njema's individual action; (4) the incentive awards to the named plaintiffs were too small; and (5) Wells Fargo violated CAFA notice requirements. We address each argument in turn.

*1. Analysis of the* Van Horn *Factors*

To determine whether a settlement is "fair, reasonable, and adequate," district courts must analyze the four *Van Horn* factors: "the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Van Horn*, 840 F.2d at 607. The first factor is the "single most important factor." *Id.* On review, "we ask whether the District Court considered all relevant factors, whether it was significantly influenced by an irrelevant factor, and whether in weighing the factors it committed a clear error of judgment." *Marshall*, 787 F.3d at 508 (quoting *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990)). Here, the court properly analyzed the *Van Horn* factors and concluded that they weighed in favor of approving the settlement.

The court found that the first factor, balancing the merits of the case against the settlement terms, weighed in favor of approving the settlement. The court observed that "the strength of the Plaintiffs' legal claims is in question" because Wells Fargo had credible defenses such as that "some class members had signed loan modification agreements that rolled all outstanding fees into the principal balance of their loans," thus releasing any claims related to those fees. *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 626-27 (8th Cir. 2016). Njema challenges this conclusion by arguing that RICO does not allow such modifications. However, Njema cites no legal authority to support this argument, and even if he is correct, the court noted that "this was one of the first property-inspection-fee class actions to be filed nationwide" and "similar RICO claims in other class actions against major mortgage providers have been dismissed." *Id.* Thus, at the very least, "Plaintiffs' ability to recover by proceeding to trial was not inevitable." *Id.* at 627. In contrast, the court found that the $25,750,000 settlement fund was "favorable to the class" and "ensures that class members will receive an adequate percentage of their damages." *Id.* at 626-27. Indeed, according to Njema's own calculations, every class member who receives an award will receive at least $5 to compensate for an average inspection fee cost of $15. Therefore, the court did not err in concluding that the first factor weighed in favor of approving the settlement.

The court found that the second factor, the defendant's financial condition, was neutral because Wells Fargo's financial condition was stable. Njema does not dispute this finding.

The court found that the third factor, the complexity and expense of further litigation, weighed in favor of approving the settlement. The court noted that proceeding to trial would be costly, extensive discovery was likely, a trial would last

ten days to two weeks, and presenting complex financial data to lay jurors would be difficult.  Njema points to no error in this finding, and we detect none.[4]

The court found that the fourth factor, the amount of opposition to the settlement, was neutral.  The district court recognized that only thirteen out of 2.7 million class members objected to the settlement, but the court gave this fact little weight because "class members may lack the time, resources, or information necessary to lodge an objection." *Id.* at 627.  Njema does not argue that the court erred in analyzing this factor.  Rather, he argues that the court erred in concluding that the thirteen objections raised were meritless.  However, Njema offers no explanation for his belief that the objections had merit, and we detect no error.

Because two factors weighed in favor of approving the settlement and two were neutral, the court concluded that the agreement was fair and reasonable.  The district court did not abuse its discretion in reaching this conclusion.

*2. The Amount of the Settlement and the CAFA Written Finding Requirement*

Njema next argues that the settlement will "cost" class members $10 to settle a $5 claim.  Njema asserts that this "dubious low value settlement" is not "fair, reasonable, and adequate."  He also argues that the district court violated CAFA because, under CAFA, settlements cannot constitute a net financial loss to individual

---

[4]Njema's only response to this finding is that the "claims contained sufficient evidence to provide ample persuasive evidence to a jury" because his own trespass claim survived a motion for summary judgment.  However, this argument addresses only the likelihood of success on the merits, which implicates the first *Van Horn* factor.  Even under that factor, Njema's chances of success on his individual trespass claim do not reflect the class members' chances of success on the property inspection fee claims.  Thus, his argument is unavailing.

plaintiffs unless the court makes a "written finding that non-monetary benefits to the class member substantially outweigh the monetary loss." *See* 28 U.S.C. § 1713.

However, Njema uses faulty math. He concludes that the settlement "costs" each class member $10 because the average cost of the inspections fees was $15 and because, assuming all class members receive a settlement award, each class member will recover only $5. But class members have already paid the inspection fees; the only remaining question is how much they can recover. According to Njema's logic, any class action settlement that does not result in class members receiving the full value of the damages alleged in the complaint would be considered a "net loss" for the purpose of CAFA's written finding requirement. This cannot be correct. Rather, CAFA requires a written finding only when the settlement obligates a class member "to pay sums to class counsel that would result in a net loss to the class member." 28 U.S.C. § 1713. The terms of this settlement do not obligate class members to pay class counsel or to incur any additional expense to retrieve their awards. Attorneys' fees will be deducted from the total settlement fund, and class members will receive a net gain from the remaining settlement funds. Therefore, this argument has no merit.

### 3. The Release Provision and Wells Fargo's Waiver

Njema argues that the release provision barring class members from prosecuting claims relating to property inspection fees is "unfair and creates 'plain legal prejudice' against appellant or others [sic] class members who would rather not be bound by the terms of the agreement." Further, Njema argues that Wells Fargo violated the district court's preliminary approval order by waiving the injunction so that Njema's trespass claim could proceed to trial in the Minnesota district court.

However, as the district court noted when denying Njema's motion to certify trespass as a related claim, "no class member is required to waive a trespass claim in

order to recover under the pending settlement because the claims are not related." Thus, the release provision does not prejudice class members who wish to litigate trespass claims separately. Furthermore, Njema fails to explain how Wells Fargo's purported waiver of the release provision in his individual action would render the settlement agreement unfair or violate the district court's preliminary approval order. Thus, he fails to show an abuse of discretion.

### 4. Amount of Incentive Awards to Named Plaintiffs

Njema next argues that the $10,000 incentive awards to the named plaintiffs were "unfair for the named plaintiffs as their lives have been disrupted while carrying their obligation on behalf of the numerous class." However, Njema lacks standing to argue that the incentive awards are too small. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."). Njema is not a named plaintiff, so he is not injured by the district court's decision not to award larger sums. *See Lujan v. Def.'s of Wildlife*, 504 U.S. 555, 560 (1992) (holding that the first requirement of standing is that the plaintiff must have suffered an "injury in fact"); *United States v. Northshore Mining Co.*, 576 F.3d 840, 848 (8th Cir. 2009) ("[A] party's aggrieved status does not extend to the vindication of the private interests of third parties." (quotation omitted)).

### 5. CAFA Notice Requirement

Lastly, Njema argues that the district court erred in approving the settlement because Wells Fargo did not serve notice on the appropriate government officials. CAFA requires that, within ten days of the filing of a proposed class action settlement, each defendant must provide notice of the proposed settlement to "the appropriate State official of each State in which a class member resides and the appropriate Federal official." 28 U.S.C. § 1715(b). Njema argues that this

requirement was violated because he "is not aware that such notices were sent as no references of such a notice exist in the approval order."

However, this issue is waived because neither Njema nor any other objector raised this issue in the district court. *See Quinn v. St. Louis Cty.*, 653 F.3d 745, 752 n.6 (8th Cir. 2011) (holding that a party waives a claim by failing to present it to the district court). Because Njema did not raise the issue before the district court, no evidentiary record was created to evaluate this claim, and we decline to address it.

### III. CONCLUSION

In conclusion, none of Njema's arguments persuade us that the district court abused its discretion in denying joinder or approving the settlement agreement. Therefore, we affirm the judgment of the district court.

_____